FILED
2025 Dec-02 AM 11:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

FILED
2025 DEC -1 P 3:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHER DISTRICT OF ALABAMA
SOUTHERN DIVISION**

KEYARAH McKENZIE SMITH,

Plaintiff,

v. Case No.: 2:25-cv-00545-MHH

WESTLAKE SERVICES, LLC
d/b/a WESTLAKE FINANCIAL,

Defendant.

## OPPOSITION TO DEFENDANTS MOTION TO DISMISS

## PRO SE STANDARD OF REVIEW

As a preliminary matter, Plaintiff appears pro se, and her filings must be liberally construed and held to less stringent standards than those drafted by attorneys. Haines v. Kerner, 404 U.S. 519 (1972); Erickson v. Pardus, 551 U.S. 89 (2007). On a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts as true, draw every reasonable inference in Plaintiff's favor, and determine only whether the complaint states a plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662 (2009). Defendant's Motion improperly attempts to resolve factual disputes, reinterpret exhibits in its favor, and impose evidentiary burdens inappropriate at the pleading stage—particularly against a pro se litigant whose Amended Complaint is detailed, fact-specific, and supported by exhibits, CFPB records, and credit denial letters. The Motion must be evaluated under the liberal pro se standard and denied.

**A. Pro Se Standard and Rule 12(b)(6)**

1. Plaintiff appears pro se. Accordingly, her pleadings must be liberally construed and held to less stringent standards than those drafted by attorneys. Haines v. Kerner, 404 U.S. 519 (1972); Erickson v. Pardus, 551 U.S. 89 (2007). Courts must interpret pro se filings "to do substantial justice" rather than apply rigid technical formalities that would defeat meritorious claims solely due to drafting deficiencies.
2. At the Rule 12(b)(6) stage, the Court must accept all well-pleaded factual allegations as true, draw all reasonable inferences in Plaintiff's favor, and may dismiss only if the claim fails to state a plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662 (2009). Whether Defendant disputes the facts is irrelevant at this stage; factual disputes are resolved later, not on a motion to dismiss.
3. Plaintiff's Amended Complaint is not conclusory. It sets forth, among other things:

   • specific dates, communications, and notices,

   • screenshots and documentary exhibits,

   • CRA disputes and responses,

   • CFPB filings and responses,

   • post-repossession documents,

   • housing denial letters tied directly to the derogatory tradeline,

   • UCC statutory violations, and

   • contractual and arbitration correspondence.

   Far from offering "threadbare recitals," Plaintiff alleges concrete facts and attaches evidence supporting each claim.

4. Defendant's Motion is procedurally improper because it attempts to:

   • resolve factual disputes,

   • reinterpret exhibits in its favor,

   • introduce self-serving characterizations of documents,

   • assert its own version of events over Plaintiff's factual allegations, and

   • apply an evidentiary standard suitable only for summary judgment.

   These arguments exceed the scope of Rule 12(b)(6), especially where Plaintiff's claims rely on disputed facts, missing statutory notice, and post-repossession document creation—all issues requiring discovery.

5. To the extent Defendant relies on documents not incorporated into the Complaint or not proven to have been sent to Plaintiff, those materials may not be considered at the dismissal stage. Exhibits do not "control" where:

   • their authenticity is disputed,

   • they were not provided contemporaneously to Plaintiff,

   • they were produced only in response to regulatory complaints, or

   • they contradict statutory requirements on their face (for example, by lacking proof of mailing or pre-sale timing).

6. Because Plaintiff is pro se, asserts legally recognized causes of action under federal and state law, and supports those allegations with detailed facts and exhibits, dismissal is inappropriate. The Motion should be denied so this case may proceed to discovery, where factual disputes—such as mailing, notice, account accuracy, arbitration refusal, and personal property retention—may be tested with evidence, not conjecture.

6A. Alternative Pleading Doctrine Reinforces Denial of the Motion. Even if the Court were to conclude that any individual cause of action requires further factual development, dismissal is still improper under the doctrine of alternative pleading. Federal Rule of Civil Procedure 8(d)(2)–(3) expressly allows a plaintiff to plead alternative and even inconsistent theories of relief at the pleading stage. Plaintiff's UCC claims, conversion claim, FCRA claim, breach-of-contract claim, and ADTPA claim all arise from the same factual nucleus and are each independently viable. The survival of any one of these theories is sufficient to defeat Defendant's Motion in its entirety.

**B. UCC Claims (Counts I–III)**

(Repossession, Notice, Commercial Reasonableness, Personal Property, Deficiency)

**(1) Lack of Pre-Sale Notice and Defective Disposition (Counts I & II)**

7. No Pre-Sale Notice Was Ever Sent or Received. Defendant attaches a purported "Notice of Intent to Sell" and asserts compliance with Ala. Code §§ 7-9A-611 and 7-9A-614. Plaintiff alleges that no such notice was mailed prior to repossession, and the first time she ever saw these documents was when Westlake uploaded them into the CFPB portal after she filed complaints, well after the repossession occurred. Post-hoc production cannot retroactively satisfy statutory pre-sale notice obligations.

   To be legally valid under Article 9, notice must be:

   • sent before disposition of collateral,

   • in a manner reasonably calculated to reach the debtor, and

   • provide a meaningful opportunity to redeem.

   Documents created, back-dated, or uploaded only after repossession are not operative notices and cannot satisfy statutory requirements.

8. Exhibits Produced After Repossession Cannot Override Allegations of No Notice.

Defendant incorrectly invokes the doctrine that exhibits control over allegations. That rule applies only when an exhibit is (1) authentic, (2) incorporated into the complaint, and (3) clearly contradicts the allegations as a matter of law.

Here, the purported notices:

• were not provided to Plaintiff prior to repossession,

• were never received in the mail, and

• were produced only after CFPB complaints were filed.

Thus, they do not contradict Plaintiff's factual allegation that no pre-sale notice was ever sent, and they cannot be used to defeat her claim at the pleading stage. Further, to contradict the allegations, the exhibit would have to show statutory compliance on its face—including timing and proof of mailing. It does not.

9. Defendant Provides No Proof of Mailing as Required by the UCC.

While Alabama law does not require certified mail, Westlake must show that notice was actually sent in a commercially reasonable manner. Defendant provides no:

• envelope,

• tracking number,

• postmark,

• address label,

• affidavit of mailing, or

• other evidence of dispatch.

Without proof of mailing, whether any notice was ever sent is a material factual dispute inappropriate for dismissal. In re Downing, 286 B.R. 900 (Bankr. S.D. Ala. 2002).

**(2) Commercial Reasonableness (Count III)**

10. Commercial Reasonableness Cannot Be Resolved on a Motion to Dismiss.

Defendant repeatedly asserts that repossession, sale, and accounting were "commercially reasonable." Commercial reasonableness is a fact-intensive determination requiring evidence such as:

• auction location,

• bidders present,

• sale method and marketing efforts,

• sale price relative to fair value,

• timing and expenses.

These issues cannot be adjudicated on the pleadings alone. In re Downing confirms that commercial reasonableness is a question of fact for the trier of fact.

Plaintiff alleges:

• no notice,

• no opportunity to redeem,

• no itemization of proceeds,

• no pre-sale disclosures, and• no post-sale accounting.

Taken as true, these allegations plausibly show the sale was not commercially reasonable.

11. Defendant Failed to Provide a § 7-9A-616 Post-Sale Accounting.

The transaction history attached by Defendant is not the accounting required by Ala. Code § 7-9A-616 because it fails to include:

- the sale price,
- total proceeds,
- expenses and fees,
- applied credits,
- a deficiency calculation, and
- the method and date of disposition.

Listing running balances is not a legally sufficient accounting under Article 9.

**(3) Personal Property (Counts I–III & Conversion Overlap)**

12. Defendant Failed to Safeguard Personal Property and Provide Retrieval Instructions.

Defendant argues Plaintiff never "requested" the return of her belongings. This misstates the law. Under Ala. Code §§ 7-9A-609(b)(2) and 7-9A-614(3)(B), the creditor has an affirmative duty to:

- inventory personal items,
- store them safely,
- provide written retrieval instructions, and
- specify location and hours for retrieval.

Plaintiff alleges Westlake:

- removed children's items and a tablet,
- failed to inventory,
- never returned the property, and

• never provided retrieval instructions.

These facts state a valid UCC claim and support her tort claim for conversion.

13. Contract Language Purporting to Waive Property Rights Is Void.

Any RISC clause suggesting Westlake may keep or discard belongings is void under federal law, particularly 16 C.F.R. § 444.2(a)(4) (FTC Credit Practices Rule), which prohibits creditors from retaining or disposing of consumer property without notice and an opportunity to reclaim it. Federal regulation supersedes contractual disclaimers.

13A. Defendant Incorrectly Claims Plaintiff Gave "Permission" or "Consent" for Westlake to Keep Her Personal Belongings.

Defendant contends that Plaintiff "consented" or "gave permission" for Westlake to retain, discard, or dispose of all personal items located in the vehicle based on a single sentence in the RISC disclaiming responsibility for property left in repossessed collateral. This argument is both legally inaccurate and misleading. Plaintiff did not—and could not—"authorize" Westlake to seize, discard, or permanently convert personal items such as children's clothing, documents, or a tablet. No contract term can override statutory duties imposed under Alabama's UCC, which expressly requires the secured party to inventory, safeguard, and provide retrieval instructions for personal property removed with collateral. Ala. Code §§ 7-9A-609(b)(2); 7-9A-614(3)(B). Further, the FTC Credit Practices Rule, 16 C.F.R. § 444.2(a)(4), prohibits any contract term purporting to allow a creditor to retain or dispose of a consumer's personal property without meaningful notice and an opportunity to reclaim it. Federal regulations preempt private disclaimers. No language in the RISC can be interpreted as a waiver of Plaintiff's statutory rights or as affirmative "permission"

to permanently seize her belongings. Defendant's continued reliance on this argument underscores its misunderstanding of federal and state law governing consumer property.

**(4) Tender, Default, and Deficiency**

14. Plaintiff Need Not Tender or Reinstate to Challenge an Unlawful Repossession.

Alabama law allows borrowers to challenge unlawful repossession, lack of notice, and deficiencies without tendering the full balance or reinstating. Ford Motor Credit Co. v. Jackson, 347 So. 2d 992 (Ala. Civ. App. 1977). Westlake cannot argue that Plaintiff's UCC claims fail simply because she did not pay the entire balance.

15. Plaintiff Was Not Required to Pay the Full Remaining Balance to Avoid Repossession.

Under Ala. Code § 7-9A-623(a)–(b), redemption requires payment of:

• past-due amounts, plus

• reasonable expenses.

Acceleration of the entire balance requires proper notice, which Plaintiff alleges she never received. If acceleration was not lawfully triggered, demanding the full remaining balance was improper.

16. A Deficiency Resulting from an Unlawful Sale Cannot Be Collected or Reported.

If the sale violated Article 9 (no notice, no accounting, commercially unreasonable disposition), Westlake cannot lawfully assess or collect a deficiency and certainly cannot report it as a valid charge-off or deficiency on consumer credit reports. An unlawful sale:

• voids or reduces any deficiency,

• bars collection, and

• renders negative reporting inaccurate.

Thus, the derogatory tradeline is both legally and factually incorrect.

17. Whether the Vehicle Was Lawfully Sold Is a Core Factual Dispute.

Plaintiff alleges she was never given:

• auction information,

• sale location,

• buyer identity,

• receipts, or

• a sale certificate.

Defendant offers no evidence (at this stage) proving a lawful sale occurred. Whether there was any legitimate disposition of the vehicle is a factual matter requiring discovery, not dismissal.

**C. Conversion (Count IV)**

18. Conversion Claim Is Independent of Contract and UCC Violations.

Defendant attempts to reduce Plaintiff's conversion claim to a mere contract issue by citing boilerplate RISC language stating that Westlake may retain personal property left in the vehicle following repossession. That argument fails. Conversion is a tort, not a contract remedy, and contract provisions cannot immunize a party from liability for unlawful possession, disposal, or failure to return personal property. The conversion claim stands independently and is actionable even if the repossession itself were assumed lawful.

19. Contract Language Cannot Override Statutory and Federal Protections.

Any provision asserting that Westlake is "not responsible" for personal property or may dispose of it without notice is void and unenforceable because it conflicts with:

• Ala. Code § 7-9A-609(b)(2) (duty to repossess and handle collateral lawfully),

• Ala. Code § 7-9A-614(3)(B) (duty to provide retrieval instructions), and

• 16 C.F.R. § 444.2(a)(4) (FTC Credit Practices Rule).

Federal consumer-protection regulations preempt private contract terms. Westlake cannot use its own form language as a shield against tort liability.

20. Plaintiff Alleges Westlake Took and Retained Personal Property Without Inventory, Notice, or Return.

At the time of repossession, the vehicle contained:

· children's clothing and shoes,

· personal documents,

· a tablet device, and

· other items belonging to Plaintiff and her children.

Plaintiff alleges Westlake:

· failed to inventory or itemize the property,

· failed to notify Plaintiff of its possession,

· failed to provide a retrieval address, deadline, or procedure, and

· failed to return the property.

These facts constitute wrongful dominion and interference, satisfying the elements of conversion under Alabama law.

21. Failure to Provide Retrieval Instructions Establishes Wrongful Detention.

Alabama law places an affirmative duty on secured parties to safeguard and make accessible all personal items recovered with collateral. A creditor cannot remain silent and later claim the debtor "failed to request" the items. Plaintiff alleges no retrieval location, phone number, letter, invoice, or notice was ever provided.

This failure establishes:

· unlawful detention of property,

· lack of commercial reasonableness, and

· violation of statutory duties governing post-repossession handling of consumer property.

22. Alabama Law Recognizes Conversion Where Personal Property Is Retained After Lawful Possession.

In Vandenberg v. Aramark Educ. Servs., 81 So. 3d 326 (Ala. 2011), the Alabama Supreme Court held that wrongful retention of personal property constitutes conversion even where initial possession was lawful. Likewise, even if repossession of the vehicle were assumed lawful for purposes of this motion, unlawfully removing, disposing of, or failing to return Plaintiff's belongings constitutes conversion. The absence of inventory records and chain-of-custody documentation supports an inference of wrongful control.

23. Conversion Is Actionable Regardless of Loan Default.

Defendant appears to argue Plaintiff cannot assert conversion because the vehicle was allegedly in default. Default does not extinguish the borrower's ownership interest in

separate personal property inside the collateral. The security interest was in the vehicle, not in the children's belongings, clothing, documents, or tablet. Those items were never part of the collateral and could not lawfully be seized or retained.

24. Damages from Conversion Are Separate and Recoverable.

Plaintiff seeks damages for:

· the value of unreturned items,

· emotional distress associated with loss of her children's property,

· loss of use of the tablet and documents, and

· potential identity/privacy risk from unrecovered personal documents.

These damages are independent of the vehicle, contract, or any alleged deficiency and are fully recoverable in tort.

**D. FCRA Claim (Count V – 15 U.S.C. § 1681s-2(b))**

25. Defendant misconstrues the nature of Plaintiff's FCRA claim. Plaintiff is not simply challenging late payments or the existence of a debt in the abstract. She challenges Westlake's inaccurate reporting after an unlawful repossession and commercially unreasonable disposition, including:

• inaccurate balances and deficiency reporting,

• incorrect delinquency status, and

• failure to mark the account as "disputed" after Westlake received notice from the consumer reporting agencies ("CRAs").

26. The central legal question under 15 U.S.C. § 1681s-2(b) is whether Westlake conducted a reasonable investigation after receiving notice of Plaintiff's disputes from Experian, Equifax, and TransUnion—not whether Westlake's internal records previously reflected late payments. Furnishers must perform an independent, good-faith reinvestigation, not simply rubber-stamp their own prior data.

27. Reasonableness of a furnisher's investigation is a fact-intensive inquiry, inappropriate for resolution on a motion to dismiss. It must be evaluated after discovery, based on what information Westlake had and what steps it took. At this stage, Plaintiff's allegations of an unreasonable investigation must be accepted as true.

28. Even assuming arguendo that late payments occurred—an allegation Plaintiff disputes—such payments do not absolve a furnisher of liability under § 1681s-2(b). Furnishers remain obligated to:

- investigate consumer disputes forwarded by CRAs,
- correct any inaccuracies, and
- report accounts as "disputed" when appropriate.

The fact that a consumer was behind at some point does not authorize reporting an unlawful deficiency, inaccurate balance, or omitting the disputed status of the account.

**(1) Plaintiff Does Not Admit Default; Defendant Misstates the Allegations**

29. Defendant improperly attempts to treat allegations regarding mechanical issues, repair delays, and communication problems as an "admission" of default. That is inaccurate. Plaintiff alleges that:

• the repossession itself was unlawful,

• no compliant pre-sale notice of disposition was provided,

• no lawful auction or commercially reasonable disposition occurred,

• no proper post-sale accounting was provided, and

• the reported deficiency balance is therefore invalid.

30. An unlawful repossession and defective disposition eliminate or reduce any claimed deficiency. Reporting such a deficiency as if it were valid is a factual inaccuracy within the meaning of § 1681s-2(b). Defendant's attempt to recast these allegations as an "admission of default" mischaracterizes the pleadings and cannot defeat an FCRA claim at this stage.

**(2) Plaintiff Challenges Factual Inaccuracies, Not Legal Theories**

31. Plaintiff disputes concrete factual errors in Westlake's reporting, including:

• inaccurate delinquency status,

• an improper and inflated deficiency balance,

• continued negative reporting after an unlawful repossession,

• incorrect delinquency dates, and

• failure to flag the tradeline as "disputed" after CRA notifications.

32. These are actionable factual inaccuracies under the FCRA. Disputes arising from an unlawful repossession and defective sale remain factual disputes about what is true on the credit report, not mere legal disagreements about contract interpretation.

**(3) Identical Dispute Letters Are Lawful**

33. Defendant attempts to discredit Plaintiff's disputes because similar letters were sent to multiple CRAs. There is no provision in the FCRA prohibiting identical or substantially similar dispute letters. CRAs routinely receive standardized disputes, and 15 U.S.C. § 1681i requires each CRA to forward relevant information to the furnisher. The FCRA focuses on the furnisher's duty to investigate—not stylistic differences in dispute language.

33A. Defendant's Argument that Plaintiff's Disputes Were "False," "Duplicative," or "Not Genuine" Is Legally Irrelevant and Factually Unsupported.

Defendant repeatedly asserts that Plaintiff's disputes were "false," "form-generated," or "duplicated," implying they should not trigger duties under the FCRA. This argument fails as a matter of law. The FCRA imposes furnisher obligations whenever a consumer reporting agency transmits a dispute, regardless of the format, length, or originality of the consumer's communication. See 15 U.S.C. § 1681i(a)(2). Neither the FCRA nor any Eleventh Circuit precedent requires consumers to craft individualized, stylistically varied, or non-template dispute language. Many consumers use similar wording, consumer templates, or repeated disputes—none of which invalidates the dispute or relieves the furnisher of its statutory duties.

33B. Moreover, Defendant presents no evidence that Plaintiff's disputes were "false." They were submitted through legitimate, authenticated CRA portals and forwarded to Westlake through the ACDV system. Once a CRA transmits a dispute, the furnisher's obligations are mandatory, and Defendant cannot escape statutory liability by speculating about Plaintiff's writing style or asserting that her disputes "look similar." Courts routinely reject this argument, and nothing in

Defendant's motion negates the FCRA's applicability here. Defendant's assertion about "false disputes" is unsupported, irrelevant, and contrary to federal law.

**(4) Continuing Violations**

34. Plaintiff alleges Westlake continues furnishing inaccurate negative information on a monthly basis, including after litigation commenced. Each new furnishing of inaccurate data constitutes an independent violation and keeps the claim timely under § 1681p.

**(5) Causation Is Adequately Alleged**

35. Plaintiff attached multiple housing application denial letters stating reasons such as:

- "recent delinquent or derogatory credit obligation,"
- "serious delinquency or collection or charge-off," and
- "derogatory status on account."

36. Plaintiff has no other delinquent, charged-off, or derogatory accounts. Her remaining tradelines are current and paid as agreed. The Westlake tradeline is therefore the only plausible source of the repeated denials, satisfying the causation element for FCRA damages.

**(6) Plaintiff Has Adequately Pleaded Actual Damages**

37. Plaintiff alleges multiple categories of compensable harm, including:

- repeated housing denials,
- inability to relocate from an unsafe domestic environment,
- loss of access to credit and financing,

- emotional distress and reputational harm, and
- loss of personal property due to unlawful repossession.

38. These injuries constitute actual damages recoverable under 15 U.S.C. §§ 1681n and 1681o. No specific dollar amount is required at the pleading stage. Plaintiff seeks actual, statutory, punitive, and equitable relief and expressly seeks the maximum amount permitted by law.

**(7) Plaintiff Seeks All Relief Available Under the FCRA**

39. Defendant incorrectly argues Plaintiff must plead a specific dollar figure. Federal pleading standards do not require numerical damage calculations in a complaint. Plaintiff explicitly seeks:

- actual damages,
- statutory damages,
- punitive damages,
- costs and fees,
- injunctive relief, and
- any further relief deemed just and proper.

40. Plaintiff reserves the right to prove the full scope of her damages at trial and requests the maximum recovery available under federal law.

**E. Breach of Contract (Count VI)**

41. Defendant argues that Plaintiff's alleged payment delinquency constitutes a prior breach that bars her contract claim. This misstates both the pleadings and the law. Plaintiff alleges that Westlake committed the first material breach by:

- unlawfully repossessing the vehicle without providing legally required pre-sale notice, and
- refusing to honor the binding arbitration clause when Plaintiff properly invoked it.

A party who materially breaches a contract first cannot rely on that same contract to bar the other party's claims.

42. Plaintiff filed a consumer arbitration demand with the American Arbitration Association ("AAA") on November 26, 2024, paid the required filing fee, selected a contract-approved forum, and complied with the procedural requirements to initiate arbitration. AAA acknowledged jurisdiction and indicated that any objections raised by Westlake were issues of arbitrability to be decided by the arbitrator—not grounds to refuse participation altogether.

43. On February 4, 2025, Westlake's Assistant General Counsel expressly stated in writing that Westlake "will not be paying arbitration fees or proceeding in arbitration." This was a clear and affirmative repudiation of the arbitration clause, including the fee-allocation provision requiring Westlake to pay arbitration costs where the rules do not specify allocation.

44. The Retail Installment Sales Contract provides that, where the arbitration organization's rules do not dictate fee allocation, Westlake "will pay the filing fee, arbitrator compensation, and other arbitration costs up to $5,000, unless the law requires us to pay more." Westlake's refusal to pay arbitration fees is therefore a direct contractual breach—not merely a procedural disagreement.

45. Westlake cannot breach the arbitration clause by refusing to participate and then invoke that same clause to block Plaintiff's claims in federal court. A party in material breach of an arbitration clause cannot enforce or benefit from it to obtain dismissal or otherwise limit a consumer's remedies.

46. Courts consistently hold that repudiating or refusing to participate in arbitration constitutes waiver of arbitration rights. A party cannot selectively rely on arbitration only when it is convenient while blocking a consumer's attempt to use that same process. Westlake's conduct constitutes waiver and precludes reliance on the arbitration clause as a defense.

47. Because Defendant's refusal to arbitrate and unlawful repossession occurred before any alleged non-payment by Plaintiff, Westlake is the first breaching party. A party who commits the first material breach cannot enforce subsequent contract provisions against the non-breaching party. Any alleged failure by Plaintiff to continue making payments after the unlawful repossession is legally excused by Westlake's prior breach.

48. Accordingly, Plaintiff has adequately pled breach of contract. Defendant's argument that Plaintiff's non-performance bars relief ignores the fundamental principle that a material breach by one party discharges further performance obligations by the other. Westlake's prior breach renders its dismissal argument legally insufficient.

**F. ADTPA Claim (Count VII)**

49. Defendant relies heavily on Felton v. Vroom Auto., LLC, arguing that providing financing for a vehicle is not a "good" or "service" under the Alabama Deceptive Trade Practices Act ("ADTPA"). But Felton addressed a different context and does not insulate deceptive practices by a finance company that directly affect the cost, structure, and consequences of

a vehicle purchase. Here, Plaintiff alleges post-purchase and servicing-stage deception by Westlake itself, including:

- manipulation of financed principal and down-payment structure,
- unlawful repossession and post-repossession conduct,
- inaccurate loan balance and deficiency reporting, and
- continued furnishing of false derogatory information after notice.

This conduct constitutes unfair and deceptive practices "in the conduct of trade or commerce" under Ala. Code § 8-19-5.

50. Financing and credit extensions related to a consumer purchase are "services" under the ADTPA. Ala. Code § 8-19-3(7) defines services to include those "furnished in connection with the sale of goods." The vehicle was a consumer good; the financing was the mechanism by which Plaintiff acquired that good. Westlake's role as the assignee/finance company is thus a service "in connection with" the sale, bringing it within ADTPA's scope.

51. Whether rolled-in financing inflated the cost of the vehicle, misrepresented the deal structure, or created an unconscionable loan is a factual question inappropriate for resolution on a Rule 12(b)(6) motion. These allegations raise issues of deceptive and unconscionable conduct, not merely a disagreement over contract interpretation.

52. Defendant is not exempt from the ADTPA under Ala. Code § 8-19-7. Westlake is not a bank or insurer, and the specific deceptive practices alleged here—misrepresenting balances, mishandling repossession, and knowingly reporting false credit information—are not shielded by any regulatory exemption. Auto-finance companies and indirect lenders that purchase retail installment contracts are not categorically exempt from ADTPA

liability. The exemptions in § 8-19-7 apply only where conduct is expressly regulated by another statute that directly governs and preempts ADTPA enforcement. No such regime protects the misconduct pled in this case; thus, Defendant's exemption theory fails.

53. Knowledge and willfulness can be reasonably inferred at the pleading stage where a defendant continues deceptive conduct after receiving repeated notice. Plaintiff filed CFPB complaints, CRA disputes, emails, and written notices, yet Westlake continued furnishing false and misleading information and refused to correct it. That is enough to plausibly allege knowing and willful conduct.

54. Plaintiff satisfied ADTPA's pre-suit demand requirement under Ala. Code § 8-19-10(e) through written CFPB complaints (including but not limited to CFPB Complaint Nos. 250204-18547896 and 250218-18813328) and direct correspondence to Westlake. These communications identified the claimant, described the unfair and deceptive practices, and explained the resulting injury, satisfying the substance of § 8-19-10(e) even if they were not titled "demand letter."

55. Plaintiff's ADTPA claims are timely. Arbitration was filed on November 26, 2024, within one year of discovering Westlake's deceptive conduct and less than two years after the contract's execution. Moreover, Defendant's ongoing derogatory credit reporting and post-repossession conduct constitute a continuing violation, restarting the limitations period under Ala. Code § 8-19-14 each time Westlake furnishes misleading information.

56. Plaintiff has alleged cognizable damages under the ADTPA, including:

- financial harm,
- loss of housing opportunities,
- inability to relocate from a dangerous domestic situation,

- increased cost of credit and transportation, and
- emotional distress.

Alabama courts recognize such economic injuries as recoverable under the ADTPA. Billions v. White & Stafford Furniture Co., 528 So. 2d 878 (Ala. Civ. App. 1988).

57. Public harm is implicated because Westlake finances consumer vehicles statewide, furnishes information to major CRAs, and its practices affect housing, transportation, and access to credit for vulnerable consumers. The ADTPA is designed to deter exactly this kind of systemic marketplace misconduct, not merely to resolve a private contract dispute. Even if Defendant attempts to frame this litigation as a "private contractual disagreement," its conduct has broader impact on the public by distorting credit markets, denying families access to housing, and perpetuating financial instability. The public-interest component thus weighs strongly in favor of ADTPA coverage and against dismissal.

58. The ADTPA expressly applies to unfair or deceptive acts "in the conduct of trade or commerce" connected with consumer goods and services. Defendant's continued false reporting, handling of repossession, and post-sale conduct fall squarely within its scope.

**G. Defendant's Procedural Misconduct and Dilatory Litigation Tactics**

59. Defendant has repeatedly engaged in delay rather than addressing the merits. Despite the Court's October 2, 2025 directive requiring the parties to confer before Plaintiff filed her Amended Complaint, Defendant did not initiate any meaningful conferral or settlement discussion. Instead, defense counsel sought extensions based on personal vacation and later illness, then used that time to prepare another motion to dismiss instead of a substantive answer.

60. Defendant has now filed multiple motions to dismiss raising, substantially the same arguments that were already presented and mooted by the Amended Complaint, rather than answering and allowing the case to proceed into discovery. Re-filing recycled motions wastes judicial resources and prejudices Plaintiff.

61. Defendant's repeated requests for extensions, refusal to participate in arbitration, and reliance on recycled arguments demonstrate a pattern of bad faith and intentional delay. This is particularly prejudicial where Plaintiff alleges ongoing housing denials and an inability to relocate her minor children from a domestic-violence environment while Defendant continues to furnish inaccurate derogatory credit information.

62. The Court should take note of this procedural history and deny any further attempts to delay merits-based litigation through duplicative motion practice.

**H. Conclusion**

63. Plaintiff has alleged detailed factual claims supported by exhibits and statutory authority. These allegations state plausible causes of action under:

• the UCC (repossession, notice, commercial reasonableness, accounting, personal property),

• conversion,

• the FCRA (15 U.S.C. § 1681s-2(b)),

• breach of contract, and

• the Alabama Deceptive Trade Practices Act.

64. Defendant's Motion asks the Court to make premature factual determinations, to treat post-repossession documents as if they were contemporaneous notice, and to resolve contested issues of mailing, sale, and reporting at the pleading stage—contrary to Rule 12(b)(6).

65. When all allegations are taken as true and all reasonable inferences are drawn in Plaintiff's favor—as required at this stage—the Amended Complaint easily satisfies federal notice-pleading standards and must be allowed to proceed.

WHEREFORE, Plaintiff respectfully requests that the Court:

• DENY Defendant's Motion to Dismiss in its entirety;

• Permit this matter to proceed to discovery; and

• Grant any further relief the Court deems just and proper.

Respectfully submitted this 1st day of December , 2025.

/s/ Keyarah McKenzie Smith

Plaintiff, Pro Se
4940 Court G
Fairfield, AL 35064
(659) 257-8668
keyarah.smith@outlook.com

## CERTIFICATE OF SERVICE

I hereby certify that on this ~~20th~~ 1st day of ~~November,~~ December 2025, I electronically signed filed the foregoing Opposition to Defendants Motion to Dismiss with the Clerk of the Court using the CM/ECF system, which will automatically send notice of such filing to all counsel of record who are registered participants in the Court's electronic filing system listed below:

*/s/ Danielle E. Douglas*
Danielle E. Douglas
ADAMS & REESE LLP
1901 Sixth Avenue North, Suite 1110
Birmingham, Alabama 35203
(205) 250-5000
(205) 250-5034 (facsimile)
danielle.douglas@arlaw.com
*Counsel for Defendant Westlake Services, LLC dba Westlake Financial*

/s/Keyarah McKenzie Smith
Pro se Plaintiff
4940 Court G
Fairfield, AL 35064

# Exhibit A

Consumer Financial Protection Bureau (https://www.consumerfinance.gov/)

Start a new complaint

All complaints (.)

# 250204-18547896

CLOSED

## Submitted

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 2/4/2025 | Vehicle loan or lease | Repossession |

### We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

---

#### YOUR COMPLAINT

I am filing a formal complaint against Westlake Financial Services due to their failure to honor their contractual obligations, improper repossession practices, refusal to engage in arbitration, predatory lending practices, and failure to provide required notices regarding my vehicle. Additionally, Westlake Financial is in violation of the FTC Holder Rule (16 C.F.R. § 433) as the vehicle had significant mechanical issues that made it inoperable, yet they continued to demand full payment without resolution. Key Issues: 1. Failure to Address Mechanical Issues – Violation of the FTC Holder Rule (16 C.F.R. § 433) • The FTC Holder Rule establishes that any claim or defense the consumer may have against the seller also applies to the creditor or holder of the loan. • I notified Westlake Financial multiple times about severe mechanical defects in my vehicle, which rendered it inoperable for over eight (8) months. • Despite these repeated notifications, Westlake Financial failed to provide any assistance, remedy, or resolution, and continued to demand full payment. • The vehicle was unable to be repaired despite multiple attempts, leaving me with a non-functioning vehicle while still being held to an unreasonable payment schedule. • Since Westlake Financial is the holder of the contract, they are legally responsible under the FTC Holder Rule for the seller's failure to provide a functioning vehicle. 2. Failure to Honor Arbitration Agreement – Breach of Contract • My Retail Installment Sale Contract with Westlake Financial includes a binding arbitration clause, allowing either party to elect arbitration as the method of dispute resolution. • I formally filed for arbitration with the American Arbitration Association (AAA), paid the $225 filing fee, and notified Westlake Financial of the pending arbitration case. • Westlake Financial is now refusing to arbitrate, attempting to force the case into Small Claims Court despite their contractual obligation to resolve disputes through arbitration. • This refusal to arbitrate constitutes a breach of contract and a bad faith effort to avoid accountability. • Under the Federal Arbitration Act (9 U.S.C. § 1-16), arbitration agreements are legally binding and enforceable,

and companies cannot ignore them once elected. 3. Improper Repossession & Failure to Provide Required Notices • Westlake Financial repossessed my vehicle citing non-payment, despite being fully aware that the vehicle was inoperable and unable to be repaired. • I have not received any correspondence regarding: • My right to reclaim the vehicle • The amount required to reinstate the loan or redeem the vehicle • How to retrieve my personal property from the vehicle • Under Uniform Commercial Code (UCC § 9-611 and § 9-614) and applicable state law, lenders must provide proper notice before and after repossession, which Westlake Financial has failed to do. • Failure to notify me about retrieving my personal property violates consumer protection laws and subjects them to potential liability. 4. Unfair and Predatory Lending Practices – Excessive Interest Rate • Westlake Financial imposed an excessive and predatory interest rate of 14.79%, making repayment financially impossible. • The loan's high interest rate, extended 72-month term, and the vehicle's mechanical issues resulted in an unconscionable financial burden on me. • This violates principles of fair lending and constitutes predatory lending, especially given that the vehicle could not be repaired despite multiple attempts. 5. Negative Credit Reporting While Dispute is Ongoing – FCRA & FDCPA Violations • Westlake Financial continues to report negative information to Equifax, Experian, and TransUnion while this dispute remains unresolved and in arbitration. • Under the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681s-2, creditors are required to accurately report information and update reporting if an account is in dispute. • Under Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692e(8), it is illegal to furnish false or misleading credit information, particularly when an account is subject to a pending dispute. • Westlake Financial's failure to cease negative reporting or at the very least note the dispute status violates consumer protection laws.

ATTACHMENTS

CLAIM (WESTLAKE).pdf (123.1 KB)

Open WESLAKE 1-14.pdf (1.5 MB)

ARB WESTLAKE.pdf (104.6 KB)

IMG_5215.png (275.4 KB)

View full complaint ⊕

## Sent to company

STATUS

Sent to company on 2/4/2025

We've sent your complaint to the company, and we will let you know when they respond.

Their response should include the steps they took, or will take, to address your complaint.

Companies generally respond in 15 days. In some cases, the company will let you know their response is in progress and provide a final response in 60 days.

## Company responded

STATUS

Company responded on 2/5/2025

RESPONSE TYPE

Closed with explanation

### Company's Response

Please see attached response and supporting documents.

ATTACHMENTS

Payment History.pdf (14.9 KB)

Notice of Intent 1.26.25.pdf (292.2 KB)

Keyarah McKenzie Smith Response.pdf (90.3 KB)

Contract.pdf (1.6 MB)

Serious Default 11.10.24.pdf (141.5 KB)

## Feedback requested

| STATUS | FEEDBACK DUE |
|---|---|
| Feedback requested on 2/5/2025 | 4/6/2025 |

### Provide feedback about the company's response

We welcome your feedback on how the company responded to your complaint. You will have 60 days from when the company responded to share your feedback. The CFPB will share your feedback responses with the company and use the information to help the CFPB's work with consumer complaints.

## Closed

The CFPB has closed your complaint.

Privacy Act Statement

OMB #3170-0011

Note on user experience

Have a question? ¿Preguntas?

(855) 411-2372

TTY/TTD: (855) 729-2372

8 a.m. to 8 p.m. ET, Monday through Friday
(except federal holidays). (https://www.opm.gov/policy-data-oversight/pay-leave/federal-holidays/#url=Overview)

More than 180 languages available.

An official website of the United States Government

# Exhibit B

# Automatic reply: Smith v. Westlake Services, LLC – Meet and Confer Regarding Extension of Time to Respond to Amended Complaint

---

Danielle Douglas
Keyarah Smith
Tue, Oct 21, 2025, 5:23 PM

Hi Ms. Smith,

Apologies for my delay. I did want to let you know that my client has declined your latest demand and they have not decided to counter at this time. Should that change I will be sure to let you know.

I also have a request for you. I know you've filed an amended complaint. I have a trip planned tomorrow 10/22 through 10/28. I know I have until 10/30 to file a response; however, I was really hoping to not work on my vacation, which I rarely get to do. Do you have an objection to my asking for a 7-day extension to my current responsive pleading deadline of 10/30?

Thank you!
Danielle

---

Keyarah Smith
Danielle Douglas
Wed, Oct 22, 2025, 2:26 AM

Hi Ms. Douglas,

Thank you for letting me know. I don't entirely object to a short extension, but I do want to be transparent that I really need to bring this matter to a close soon due to some urgent personal circumstances.

If your client would be willing to discuss settlement before your trip, I'd be open to hearing an offer so we might resolve this quickly and avoid further filings. I'd appreciate anything that could help move things toward closure before the end of the month.

Thank you,

Keyarah

Get Outlook for iOS

---

Danielle Douglas
Keyarah Smith
Wed, Oct 22, 2025, 2:26 AM

Thank you for your email. I am out of the office in court today and will be delayed in responding.

Thanks,
Danielle

---

Keyarah Smith
Danielle Douglas
Wed, Oct 22, 2025, 2:37 AM

Following up on my earlier message — after reviewing everything, I've decided that I must object to any further extensions. This case has been pending for some time, and I'm really trying to bring it to a close as soon as possible.

I also want to note that the Court's October 2nd order directed both parties to confer before I filed my Amended Complaint. I reached out promptly, and while you acknowledged receipt, we never actually conferred before the filing deadline. I've made every effort to comply with the Court's requirements in good faith, and I'd appreciate the same from your side moving forward.

That said, I don't want you to have to work on vacation. If you're able to reach out to your client before you leave, I truly believe a reasonable counteroffer or settlement discussion would be in everyone's best interest. It could help us resolve this matter quickly and spare further motion practice for both sides.

Get Outlook for iOS

---

Danielle Douglas
Keyarah Smith
Wed, Oct 22, 2025, 7:37 AM

Thanks Ms Smith.

As I've previously relayed, my client is not interested in negotiating at this time based on our current evaluation of your claims. If anything changes in that regard, we will let you know.

No worries regarding the extension request.

Thanks,
Danielle

**DANIELLE DOUGLAS**
**Associate**

**E:** Danielle.Douglas@arlaw.com
**O:** 205.250.5024
Adams & Reese, LLP
1901 6th Avenue North, Suite 1110
Birmingham, AL 35203

adamsandreese.com

On Oct 22, 2025, at 2:37 AM, Keyarah Smith <keyarah.smith@outlook.com> wrote:

Following up on my earlier message — after reviewing everything, I've decided that I must object to any further extensions. This case has been pending for some time, and I'm really trying to bring it to a close as soon as possible.

I also want to note that the Court's October 2nd order directed both parties to confer before I filed my Amended Complaint. I reached out promptly, and while you acknowledged receipt, we never actually conferred before the filing deadline. I've made every effort to comply with the Court's requirements in good faith, and I'd appreciate the same from your side moving forward.

That said, I don't want you to have to work on vacation. If you're able to reach out to your client before you leave, I truly believe a reasonable counteroffer or settlement discussion would be in everyone's best interest. It could help us resolve this matter quickly and spare further motion practice for both sides.

Get Outlook for iOS

# Exhibit C

Danielle Douglas
Keyarah Smith
Thu, Oct 30, 2025, 8:51 AM

Ms Smith,

I woke up with flu symptoms today and cannot get this finished today. Thus I am going to file an emergency motion for an extension, but wanted to confer with you first to see if you are still opposed to a 7 day extension for me so I can notate it in my motion. Thank you.

Danielle

**DANIELLE DOUGLAS**
**Associate**

**E:** Danielle.Douglas@arlaw.com
**O:** 205.250.5024
Adams & Reese, LLP
1901 6th Avenue North, Suite 1110
Birmingham, AL 35203

ADAMS & REESE

adamsandreese.com

On Oct 22, 2025, at 7:37 AM, Danielle Douglas <Danielle.Douglas@arlaw.com> wrote:

Thanks Ms Smith.

As I've previously relayed, my client is not interested in negotiating at this time based on our current evaluation of your claims. If anything changes in that regard, we will let you know.

No worries regarding the extension request.

Thanks,
Danielle

On Oct 22, 2025, at 2:37 AM, Keyarah Smith <keyarah.smith@outlook.com> wrote:

Following up on my earlier message — after reviewing everything, I've decided

that I must object to any further extensions. This case has been pending for some time, and I'm really trying to bring it to a close as soon as possible.

I also want to note that the Court's October 2nd order directed both parties to confer before I filed my Amended Complaint. I reached out promptly, and while you acknowledged receipt, we never actually conferred before the filing deadline. I've made every effort to comply with the Court's requirements in good faith, and I'd appreciate the same from your side moving forward.

That said, I don't want you to have to work on vacation. If you're able to reach out to your client before you leave, I truly believe a reasonable counteroffer or settlement discussion would be in everyone's best interest. It could help us resolve this matter quickly and spare further motion practice for both sides.

Get Outlook for iOS

---

Keyarah Smith
Danielle Douglas
Thu, Oct 30, 2025, 9:05 AM

Hi Ms. Douglas,

I'm sorry to hear you're not feeling well. I wish you a quick recovery.

While I understand and sympathize with your situation, I do still object to another extension. This matter has already experienced multiple delays, and I am facing ongoing harm due to the continued reporting at issue. However, I respect the Court's discretion in determining whether an additional extension is warranted.

Thank you,

Keyarah

Get Outlook for iOS

Danielle Douglas
Keyarah Smith
Thu, Oct 30, 2025, 9:06 AM

Thank you for your email. I am out of the office at a deposition this afternoon and will be delayed in responding. If your message is time-sensitive, please forward it to my assistant at Zach.ingram@arlaw.com, who can reach me by cell if necessary.

Thanks,
Danielle

---

8 Emails

# Exhibit D

## RE: Keyarah Mckenzie Smith v. Westlake Financial - Case 01-24-0009-0358

Justin Brandt
Keyarah Smith
Westlake_Legal Department
Tue, Feb 4, 2025, 1:25 PM

Westlake's prior statements speak for themselves.

We thus decline your request and associated allegations.

**Justin M. Brandt**
Assistant General Counsel | Westlake Financial
4751 Wilshire Blvd., Suite 100, Los Angeles, CA 90010
jbrandt@westlakefinancial.com

**From:** Keyarah Smith <keyarah.smith@outlook.com>
**Sent:** Tuesday, February 4, 2025 11:17 AM
**To:** Justin Brandt <jbrandt@westlakefinancial.com>; Consumer Case Filing Team <ConsumerFiling@adr.org>
**Cc:** Westlake_Legal Department <Westlake_LegalDepartment@westlakefinancial.com>
**Subject:** Re: Keyarah Mckenzie Smith v. Westlake Financial - Case 01-24-0009-0358

**SECURITY FIRST** External email, sender: keyarah.smith@outlook.com, use caution clicking links or opening attachments.

I acknowledge your statement that Westlake Financial is refusing to pay the required arbitration fees and will not proceed with arbitration, despite the binding arbitration agreement contained in our Retail Installment Sale Contract.

As you are aware, the arbitration agreement explicitly grants either party the right to elect arbitration, and I exercised that right by filing a claim with the American Arbitration Association (AAA) and paying the required $225 filing fee. Your client's refusal to participate in arbitration constitutes a breach of contract and a bad faith attempt to evade legal accountability.

I request that Westlake Financial formally confirm in writing that it is:

1. Refusing to pay the required arbitration fees.
2. Refusing to participate in arbitration despite a contractual obligation to do so.

If your client is refusing arbitration altogether, this will be considered a waiver of their right to arbitration under the Federal Arbitration Act (FAA), 9 U.S.C. § 1-16. Given this refusal, I will be exploring all available legal remedies, including filing a motion to compel arbitration or pursuing this matter in court.

Please provide written confirmation of your client's final position regarding arbitration by two business days, so I may proceed accordingly.

Warm regards ,
Keyarah McKenzie Smith

Get Outlook for iOS

---

**From:** Justin Brandt <jbrandt@westlakefinancial.com>
**Sent:** Tuesday, February 4, 2025 10:34:15 AM
**To:** Consumer Case Filing Team <ConsumerFiling@adr.org>
**Cc:** Westlake_Legal Department <Westlake_LegalDepartment@westlakefinancial.com>; keyarah.smith@outlook.com <keyarah.smith@outlook.com>
**Subject:** RE: Keyarah Mckenzie Smith v. Westlake Financial - Case 01-24-0009-0358

R-9(b) is not discretionary, so Respondent will not be paying arbitration fees or proceeding in arbitration.

**Justin M. Brandt**
Assistant General Counsel I Westlake Financial
4751 Wilshire Blvd., Suite 100, Los Angeles, CA 90010
jbrandt@westlakefinancial.com

**From:** Consumer Case Filing Team <ConsumerFiling@adr.org>
**Sent:** Tuesday, February 4, 2025 8:23 AM
**To:** keyarah.smith@outlook.com; Justin Brandt <jbrandt@westlakefinancial.com>; Westlake_Legal Department <Westlake_LegalDepartment@westlakefinancial.com>
**Cc:** Consumer Case Filing Team <ConsumerFiling@adr.org>
**Subject:** RE: Keyarah Mckenzie Smith v. Westlake Financial - Case 01-24-0009-0358

**SECURITY FIRST** External email, sender: prvs=513038afc7=consumerfiling@adr.org, use caution clicking links or opening attachments.

---

Good Morning,

American Arbitration Association has received the correspondence in regards to the small claims option invoked by the respondent. Because the Claimant has objected to this invocation of Rule R-9 stating that the claim does not fall under the jurisdiction of the small claims court, the Respondent's request becomes an issue of arbitrability which shall be decided by the arbitrator. Any further dispute regarding the arbitrability of this claim should be raised to the arbitrator for a determination once one has been appointed.

The case is under review with our intake process. Our Consumer Filing Team will contact the parties shortly regarding any remaining filing requirements due.

The parties will not be able to view the case on the AAA dashboard until all of the filing requirements have been met and it has been assigned to a case manager. Once it is assigned to a case manager, the parties will be able to see the case on the website when you log in.

Per the AAA rules all parties must be copied on all correspondence. We kindly remind the parties to copy each other on all correspondence. We have copied all parties on this email as per our Rules.

Thank You,
Colleen on behalf of the Consumer Filing Team

**Consumer Case Filing Team**

1101 Laurel Oak Road
Suite 100, Voorhees, NJ 08043
E: ConsumerFiling@adr.org

NPT's BEST NONPROFITS TO WORK FOR ★2024★

The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

**DISCLAIMER**: The information (including any attachments) contained in this communication is only meant for the intended recipient of the transmission, and may be a confidential or a communication privileged by law. If you are not the addressee or authorized to receive this for the addressee, you must not use, copy, disclose, or take any action based on this message or any information herein. If you have received this communication in error, please re-send this communication to the sender and delete the original message or any copy of it from your computer system. Thank You.
**DISCLAIMER**: The information (including any attachments) contained in this communication is only meant for the intended recipient of the transmission, and may be a confidential or a communication privileged by law. If you are not the addressee or authorized to receive this for the addressee, you must not use, copy, disclose, or take any action based on this message or any information herein. If you have received this communication in error, please re-send this communication to the sender and delete the original message or any copy of it from your computer system. Thank You.

# Exhibit E

Westlake Financial

4751 Wilshire Blvd. Suite 100 Los Angeles, CA 90010

February 6, 2025

Keyarah McKenzie Smith
4940 Court G
Fairfield, AL 35064

RE: CFPB Complaint # 250204-18547896
Westlake Financial Services Account # 23833495

Dear Ms. McKenzie Smith:

Westlake Financial ("Westlake", "we" or "our") has received the above referenced complaint. We value our customers and consider each complaint an opportunity to assist and service our customers more effectively. Thank you for permitting Westlake the opportunity to respond to your concerns.

To clarify, Westlake Financial does not physically check or test the vehicles. Our role is to facilitate the financing of your purchase. It is the dealer's responsibility to ensure that vehicles it sells are roadworthy and meet quality standards. As a buyer, it's important to thoroughly inspect the vehicle and ensure it meets your standards before finalizing the purchase.

Westlake does offer a merchantability claim under specific conditions. This claim can be reviewed if there's a computerized diagnostic report from a certified mechanic that identifies major issues with the engine or transmission. This report must be dated within the first 30 days or 1,000 miles from the date of the purchase. We did not receive a report to back up your merchantability claim and allow us to investigate. In the absence of this document, a separate claim must be filed against the dealership, and we will participate in any such investigation as required.

The account was charged off on January 31, 2025, resulting in a deficiency balance of $16,947.60. You remain liable for this amount, less any credit for sale of the vehicle if you do not redeem the vehicle. Attached are copies of your original contract, payment history, and notices sent to you on top of the numerous notifications we sent out regularly.

As for your legal claims, as our Legal Department has previously discussed with you, we dispute your position. We will respond to your legal claims in the appropriate venue.

Westlake trusts that we have sufficiently addressed your concerns. If you have any other questions or concerns, please call our Customer Service Department at 888-739-9192. Business hours are Monday – Friday: 5:00am – 7:00pm and Saturday: 5:00am – 2:00pm Pacific Time.

Sincerely,

Noel De Leon
Customer Assistance Associate

Westlake Financial®

4751 Wilshire Blvd. Suite 100
Los Angeles, CA 90010
1-888-739-9192

0000265-0000529 PDFT 001 ------ 739343
KEYARAH SMITH
1535 BAY AVE SW
BIRMINGHAM, AL 35211

## NOTICE OF OUR PLAN TO SELL PROPERTY

Date of Notice: **01/26/2025** Account: **23833495**

| | |
|---|---|
| Name and address of holder of contract and legal owner of Vehicle (secured party):<br><br>Telephone number to call for information: 1-888-739-9192 | Westlake Financial Services<br>4751 Wilshire Blvd. Suite 100<br>Los Angeles, CA 90010 |

| Description of Motor Vehicle ("Vehicle") | | | |
|---|---|---|---|
| **Year** | **Make** | **Model** | **VIN** |
| 2014 | CHEVROLET | IMPALA | 2G1115SL9E9211290 |

Name and address of each person (debtor) liable on the Contract:
KEYARAH SMITH
1535 BAY AVE SW,
BIRMINGHAM, AL 35211

**Subject: Motor Vehicle Conditional Contract of Sale or Security Agreement**

We have your Vehicle because you broke promises in our agreement. We intend to file for a repossessed title and dispose of the vehicle as explained in this Notice, subject to your right to redeem (get back) the Vehicle as described in this Notice.

| ☒ Private Sale |
|---|
| We will sell the vehicle at private sale sometime after 8:00 AM on **02/10/2025** . A sale could include a lease or license. |

The money that we get from the sale (after paying our costs) will reduce the amount you owe. If we get less money than you owe, you will still owe us the difference, except as limited by law. If we get more money than you owe, you will get the extra money, unless we must pay it to someone else.

You can redeem the Vehicle (get it back) at any time before we sell it by paying us the total outstanding balance (not just the past due payments) including our expenses. To learn the exact amount you must pay to redeem the Vehicle, call us at the telephone number shown at the top of this Notice. If you want us to explain to you in writing how we have figured the amount that you owe us, you may call us at the telephone number shown at the top of this Notice, or you may write to us at the address shown at the top of this Notice and request a written explanation.

If you need more information about the sale of the Vehicle, call us at the telephone number shown at the top of this Notice or write to us at the address shown at the top of this Notice.

We are sending this Notice to each of the people who owe money under your agreement, as shown at the top of this Notice, or people who have an interest in the vehicle and who are not shown at the top of this Notice.

**IMPORTANT NOTICE IF YOU HAVE FILED BANKRUPTCY: If you have filed bankruptcy, this Notice is NOT an attempt to collect a pre-petition and/or discharged debt from you, but is being made for the sole purpose of complying with Article 9 of the Uniform Commercial Code. Because you have filed for bankruptcy, we may be stayed from attempting to collect any deficiency from you outside**

**of the bankruptcy case. After you receive a discharge of your debts in the bankruptcy case, you may no longer be personally liable to us for any deficiency. We may, however, seek to enforce any existing liens against any other property that you gave as collateral for the debt.**

If you have filed for bankruptcy, or have been discharged in bankruptcy, this letter is for information purposes only and is not intended as an attempt to collect a debt.

**WRITTEN ACCOUNTING**

We will provide you with a written accounting following sale of the Vehicle. If there is a surplus, it will be paid to you within 45 days of the date of sale unless we are required by law to pay it to someone else. You may request another written accounting from the person whose name and address are show at the top of this Notice within one year of date of the sale by delivering to us or mailing to us your written request by first class mail, postage prepaid, or certified mail, return receipt requested.

**NOTICE. YOU MAY BE SUBJECT TO SUIT AND LIABILITY IF THE AMOUNT OBTAINED UPON DISPOSITION OF THE VEHICLE IS INSUFFICIENT TO PAY THE CONTRACT BALANCE AND ANY OTHER AMOUNTS DUE.**